(90 Misc. Rep. 439)

PEOPLE ex rel. LANKTON v. ROBERTS, Superintendent of Buildings.

(Supreme Court, Special Term, Oneida County. May 1, 1915.)

1. MANDAMUS ⬸87—ACTS OF PUBLIC OFFICER—SUPERINTENDENT OF BUILD-INGS.

Mandamus is the proper remedy to compel a city superintendent of public buildings to grant to a property owner, pursuant to the city's building code, a permit to alter a residence in an established residence district into a building in which to carry on an undertaking business.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 189–194; Dec. Dig. ⬸87.]

2. MUNICIPAL CORPORATIONS ⬸58—ORDINANCES—DESIGNATION OF RESI-DENCE DISTRICT.

Neither the Utica Charter, section 32 of which delegates to the common council the power to enact ordinances for various purposes, nor the Second Class Cities Law (Consol. Laws, c. 53), section 156 of which empowers the common council to establish by ordinance a building code providing for all matters concerning, affecting, or relating to the alteration or repair of buildings theretofore or thereafter constructed, authorized the common council to adopt an ordinance setting aside a residence district.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 145–147; Dec. Dig. ⬸58.]

3. EMINENT DOMAIN ⬸71—VALIDITY OF STATUTE—PROVISION FOR COMPEN-SATION.

The Housing Act (Laws 1913, c. 774, amended and made a chapter of the Consolidated Laws by Laws 1913, c. 798), section 9 of which provides that on petition therefor by two-thirds of the owners of record of the linear frontage of one side or street frontage of any block, and on approv-

al by the council such site shall be designated a residence district, in which no building other than a private e. velling shall be erected or occupied, cannot be sustained as a proper exercise of the power of eminent domain, since no provision is therein made for compensation to the owners of property taken.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 180–187; Dec. Dig. ☞71.]

4. MUNICIPAL CORPORATIONS ☞601—ORDINANCES—CONSTITUTIONALITY.

Such act is not sustainable as an exercise of the police power.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1333; Dec. Dig. ☞601.]

This is an application for a peremptory writ of mandamus. The relator is the owner of a house and lot fronting on a street surrounding Steuben Park, on the northerly side, in the city of Utica, within a residence district, attempted to be set apart by an ordinance passed by the common council of the city in March, 1914, pursuant to section 9 of chapter 774 of the Laws of 1913, as amended by chapter 798 of the same year, known as the Housing Act. The respondent is the superintendent of buildings of the city of Utica. The relator seeks the writ to compel the respondent to issue to the relator, pursuant to the building code of the city, a permit to make certain additions to and changes in the building upon such lot in order to convert it from an ordinary residence into a building in which to carry on the undertaking business, which permit the respondent has refused to issue, upon the sole ground that the ordinance setting apart the residence district forbids the conversion of the building into a building for business purposes.

The contention of the relator is that the Housing Act, and especially section 9 thereof, were unconstitutional, and that in any event the ordinance setting aside the residence district in question was so framed as to have been repealed when the Housing Act was repealed by chapter 32 of the Laws of 1915. The respondent contends that the ordinance is valid and the legislation constitutional; that, although the Housing Act has been repealed, the ordinance must stand as a completed exercise of the power delegated by the Housing Act to the municipality, unaffected by the repeal of the act; and that in any event the act of the respondent could only set aside in a review of the same by a writ of certiorari.

The city of Utica is a city of the second class. Under section 35 of the charter of the city the Legislature delegated to the common council the power to enact ordinances for various purposes. Section 156 of the Second Class Cities Law provides for the enactment of a building code by the common council in these words: "The common council shall also have power to establish by ordinance, and from time to time amend, a building code, providing for all matters concerning, affecting or relating to the construction, alteration, repair or removal of buildings and structures heretofore or hereafter erected." On or about April 8, 1910, the common council duly enacted an ordinance known as the building code of the city of Utica, which was duly amended on or about February 21, 1913, and has ever since constituted the building code of the city of Utica. On or about the 16th day of March, 1914, two-thirds or more of the owners of record of the linear frontage of one side or street frontage of a block fronting on the northerly side of the street bounding the northerly portion of Steuben Park in the city of Utica, between Charlotte street and Hopper street, did by written petition to the common council of the city of Utica, duly signed and acknowledged, ask that said side or street frontage of said block be designated as a residence district, and the common council on or about March 16, 1914, adopted an ordinance approving such petition, and thereupon such side or frontage became

a residence district pursuant to section 9 of the Housing Act, assuming that act to have been constitutiona,/ The owner of the premises of the relator at the time the alleged residence district was applied for and approved did not join in the petition therefor.

Miller & Williams and T. Harvey Ferris, all of Utica, for relator.

August Merrill, Corp. Counsel, of Utica, and Nicholas Powers, Asst. Corp. Counsel, of Utica, for respondent.

DE ANGELIS, J. [1] The respondent interposes the objection that his action in refusing to grant the permit can only be reviewed by certiorari, and that therefore he cannot be compelled to grant the permit in any event by the writ of mandamus. That he is mistaken in his position is demonstrated by the ruling of the Court of Appeals in People ex rel. Kemp v. D'Oench, 111 N. Y. 359, 18 N. E. 862, and People ex rel. Schau v. McWilliams, 185 N. Y. 92, 77 N. E. 785.

[2-4] I think it is also reasonably clear that no power to adopt the ordinance setting aside the alleged residence district was conferred upon the common council by any provision in the charter of the city or in the Second Class Cities Law, and that the only authority, if any exists, for the adoption of such ordinance, is section 9 of the Housing Act. So that the sole question remaining to be decided is whether or not section 9 of the Housing Act embodied a constitutional exercise of power by the Legislature. This legislation cannot be sustained as a proper exercise of the power of eminent domain because, if for no other reason, no provision is made therein for compensation to the owners of property taken. The legislation can only be sustained, if at all, as an exercise of the police power. I think I may adopt in part the language of Judge Dillon upon this subject, which seems fully sustained by the courts:

"Of recent years, in response to a growing demand for the preservation of natural beauty and the conservation of the amenities of the neighborhood resulting from the manner in which it has been laid out and built upon, Legislatures and municipalities have sought, by statute and by ordinance, to prevent the encroachment of undesirable features, unsightly erections, and obnoxious trades. This legislation, induced mainly by æsthetic considerations, has given rise to a series of novel questions affecting the legislative power of both the state and its governmental agent, the city. * * * Several cases have laid down the rule that by virtue of the police power merely neither the Legislature, nor the city council exercising delegated power to legislate by ordinance, can impose restrictions upon the use of *private property* which are induced solely by æsthetic considerations, and have no other relation to the health, safety, convenience, comfort, or welfare of the city and its inhabitants. The law on this point is undergoing development, and perhaps cannot be said to be conclusively settled as to the extent of the police power. * * * It has been held that it is not within the power of the Legislature by direct legislation, or by delegation of legislative authority to enact ordinances, to so limit and control the use of private property as to deprive the owner of the beneficial use thereof for causes other than the health, safety, convenience, or public welfare of the people. Thus the Legislature cannot, for the purpose of promoting the beauty of parkways or boulevards, *authorize a city to establish by ordinance a building line within the limits of private property* to which all buildings must conform without complying with the constitutional requirements as to making compensation for property taken. Nor can the Legislature confer authority on a city to *exclude from boulevards business occupations* which are not noxious in their nature and to restrict buildings

thereon to residence uses only. * * * The right of an owner to *use his property in the prosecution of a lawful business*, and one that is recognized as necessary in all civilized communities, cannot be made to rest upon the caprice of a majority, or any number, of those owning property surrounding that which he desires to use."

The foregoing is taken from section 695 of Dillon's Municipal Corporations (5th Ed.). That section and the accompanying notes state the present condition of the law on this subject, and I am compelled to follow it. Nevertheless, I would very much like to see the law broadened, not in the direction of Socialism, nor to take away one whit from the proposition that all men are endowed with certain unalienable rights, not to interpose a single obstacle to the reasonable and healthy growth of a city, but to prevent a person who owns real estate in a residence district from using the same for any purpose unusual in such districts, unreasonably, and in a spirit that fair men would not commend.

I am not considering the undertaking business as different from any other business. If, however, the business to be conducted upon the premises in question should prove to be a nuisance, it could be abated, and an injunction would lie to compel its discontinuance without regard to any ordinance or statute.

The peremptory writ may go, but without costs. Ordered accordingly.