In the Matter of the Application of MARY ISENBARTH, Respondent, for a Mandamus Order against MICHAEL BARTNETT, as Inspector of Buildings of City of New Rochelle, Appellant.

Second Department, October 19, 1923.

**Municipal corporations — zoning ordinances — validity — part of street should not be zoned as "residential" where remainder of street is used for business — restrictive covenants not controlling.**

A zoning ordinance is unreasonable and invalid which classifies four blocks on one side of a street as "residential" where the remainder of the street has long been used for business purposes and two of the three private owners in said four blocks object to zoning that portion of the street as "residential" and where the only reason for the classification is the existence of restrictions against the use of said blocks for business purposes and the fact that to use them for such purposes would injure a private residential park, of which the four blocks constitute a part.

APPEAL by the defendant, Michael Bartnett, as inspector, etc., from a peremptory mandamus order of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of the county of Westchester on the 27th day of March, 1923, after a trial of the issues presented by the return to an alternative order requiring the appellant to grant the respondent a permit for the erection of a building for business purposes on premises fronting on North avenue in the city of New Rochelle.

The refusal of the appellant to issue the permit was on the ground that the property in question was restricted to residential use by the Zoning Ordinance of the City of New Rochelle, adopted on May 31, 1921, and approved on June 2, 1921.

*Charles A. Van Auken, Corporation Counsel,* for the appellant.

*John M. Holzworth,* for the respondent.

KELBY, J.:

This court on a prior appeal herein held that mandamus was a proper remedy, and reargument was denied. (See 205 App. Div. 845; Id. 895.) On this appeal the question presented is whether the Zoning Ordinance, in its operation upon petitioner's property, is unreasonable and, therefore, invalid. The court below has held that it is. The brief of the appellant does not appear to contend that this finding and conclusion did not have support in the evidence, its argument being along the line of the assertion that the Zoning Ordinance was a reasonable exercise of the police power. The evidence introduced by the petitioner was not materially contradicted. Her witnesses testified that North avenue (upon which her property is situated) is one of the principal arteries of business of the city; that the classification of the property as

" residential " caused damage to the property. Its market value as residential property was $15,000 to $21,000, as against $55,000 for business uses. The appellant's testimony was largely directed to showing the neighborhood considerations, which led to the zoning of the property as " residential," and to recantation by three or four out of a far larger number of residents who joined in a petition that the property should be zoned as " business property."

The physical situation and conditions appear from the zoning map, attached to the record. North avenue is zoned for business along its entire west side, opposite petitioner's property, for about thirteen blocks. On the east side it is similarily zoned for four blocks up from the New Haven railroad tracks and station to petitioner's property, where the use shifts to " residential " and so continues for four blocks, where again the " business " zoning begins and continues for some blocks. In the four blocks restricted to " residential," there are but three private owners: petitioner for 186 feet, Mr. Carlisle for 50 feet, Mrs. Bill for 200 feet, then a high school and a church. Of these private owners Mr. Carlisle is also against the zoning as " residential," and so testified. Mrs. Bill does not live on the property, but in Rochelle park, and as such resident of Rochelle park is opposed to opening up the property for business, since thereby the vista or entrance of Rochelle park will be impaired. She bought the North avenue piece as restricted property, but has secured the consent of her neighbors in the park to the leasing of it to the Woman's Club, free from the restrictive covenants against anything other than private residences.

It is clear that the zoning of the North avenue frontage including petitioner's piece was primarily with a view of maintaining unimpaired the vista of Rochelle park. This is not a public park, but a private development which originally owned all the North avenue frontage and ran about 4,000 feet back. From it, about twenty years ago, petitioner bought her 186 feet front, running back to the park front proper, which front consists of a boulevard and a large grass lawn. It was then sold subject to the general restrictions affixed by the Rochelle park owners whereby nothing but private residences might be erected on the North avenue frontage, and petitioner did erect such. These restrictive covenants still are in force, but the effect of the Zoning Ordinance has been to add a new and more certain sanction to the restriction of use. Since petitioner erected her house the character of North avenue has definitely changed. At its upper end the New York, Westchester and Boston railroad has erected its line and its station, and the effect has been to make North avenue the direct street between the New York, New Haven and Hartford railroad and the

New York, Westchester and Boston railroad. It appears to have become one of the main thoroughfares in the city, and this has necessitated widening it twice in recent years and the likelihood of that being done again. On one of these widenings, petitioner's front was cut back and her line of elm trees, there when she bought the property, cut down. In front of her property are three several lines of trolley cars, using between them two double tracks. On the immediate opposite of the street are a gasoline supply station and garage in operation, and an automobile salesroom. Next is a tenement occupied by many colored families. No residences have been built on North avenue for many blocks for about twenty years, and all improvements have been for business use.

The zoning commissioners wavered between the plain fact that the avenue had lost its residential character and the opposing fact that to zone the east side for business would detract from the vista of the entrance to the park. It was conceded that, in finally zoning for residences and so preserving this vista, they had taken into consideration the fact of the existing restrictive covenants as a circumstance of some importance, *i. e.*, that even if the east side was zoned for " business," the covenants, if enforced, would prevent availing of such zoning permission. It is obvious, however, that the efficacy of a private restriction is quite a different matter from that of a public zoning. The former is of no force unless asserted by action of covenantees, and if the court found a material change in the nature of the neighborhood the private covenants might be denied enforcement.

The zoning commissioners rest upon the importance of preserving the vista by restricting the property in front of it to residential uses. In their proceedings they first determined that the zoning should be for business, and so reported to the common council. Thereupon a petition was circulated among the residents of the park, pointing out the adverse effects on the vista of such a zoning, asking a redetermination. The petition was acceded to, and the property rezoned as " residential."

There can be no doubt that this action was a yielding to the idea of preserving the vista of this private park by restricting petitioner's property to a use which the development of the rest of the street and the neighborhood had rendered obsolete. The Court of Appeals in *People ex rel. Sheldon* v. *Board of Appeals* (234 N. Y. 484) has lately dealt with the factors which would justify zoning a neighborhood as " business." These factors have been sacrificed to the purely æsthetic purpose of preserving a vista to private property, which is a matter to be secured so far as it may by private covenant, without the backing of the police

power. In *People ex rel. Lankton* v. *Roberts* (90 Misc. Rep. 439, 442; affd., 171 App. Div. 890) the court quoted with approval Judge Dillon's treatise on Municipal Corporations (5th ed. § 695), giving that jurist's opinion that the police power cannot, for æsthetic purposes, be used to deprive the owner of property of its full beneficial use, and that, in short, zoning or similar legislation is not to be exercised for purposes other than the health, safety, covenience and public welfare of the people at large. It might add to the general attractiveness of the city to preserve this private vista, but, if so, such would seem to be a matter to be governed by the eminent domain principle, with compensation to the owner, rather than the zoning practice, with loss to him. At common law, a fine vista was not a property right, either publicly or privately. Coke says that an easement of prospect was " a matter of delight only," and not of necessity, and, therefore, no action would lie for its impairment. (19 C. J. 902.) Petitioner has been subjected to the preservation of this vista by taking from her the present natural use of her property. It is not disputed that, as a business locality, her place would be worth about $55,000 as against $15,000 to $21,000, its residential use value. In addition, these different values reflect upon the amount of the probable award she may get in new widening proceedings for the avenue, now contemplated, for, if held to the residential use and value, the award will hardly equal what it would be for a business use and value. The court below correctly held that the Zoning Ordinance was " legally unreasonable."

The final order should be affirmed, with costs.

Present — KELLY, P. J., RICH, JAYCOX, MANNING and KELBY, JJ.

Final order granting writ of mandamus unanimously affirmed, with costs.