Mamo Pittoxi, J.
By this proceeding under article 78 of the Civil Practice Act, the petitioner seeks an order in the nature of a mandamus for the issuance of certain building permits, asserting that provisions of the Town of North Hempstead Zoning Ordinance dictating such refusal are, as to the petitioner’s premises, arbitrary, unreasonable and unconstitutional.
The property involved has a frontage of 191 feet on its northerly side which is the southerly boundary of the Biverhead Expressway now in the process of construction. Its frontage on Willis Avenue is 383 feet. The frontage on the southerly boundary line is 149 feet and that on the westerly boundary is approximately 317 feet. It is located in Bosyln Heights, in an area bounded on the north by the Biverhead Expressway, on the east by Willis Avenue, on the south by the Northern State Parkway and on the west by an elevation which rises into a small residential community.
Under the present Building Zone Ordinance of the Town of North Hempstead, the subject premises are classified as residential “ B Such classification prohibits the improvement of the subject property for business purposes and specifically prohibits the use of this property for a gasoline filling station, diner and ice cream shop. The subject property, after conversed highway. The Expressway which is now being built on demnation by the State of New York, has an approximate frontage of 383 feet on Willis Avenue, a main arterial, highly trathe former Power House Boad will be one of the major traffic *700 State of New York for widening purposes. He also proposes to erect a diner and an ice cream shop. The diner is also a use which had existed at this particular corner prior to the condemnation by the State. The only new use on this particular corner is the proposed ice cream shop. It must be pointed out that some time prior to 1948 the subject premises had been zoned by the Town Board as business “ A ” and this was subsequently changed to residential “ B ”.
*699 The petitioner now applies for a permit to erect a gasoline corner of Power House Boad prior to the condemnation by the filling station which is the same use that had existed at the arteries on Long Island since it will link the City of New York with Biverhead, Long Island.
*700 Before the filing of an application for building permits, the petitioner instituted a proceeding for a change of zone with the Town Board by a petition verified January 18, 1957. This petition came on for a hearing after publication before the Town Board on April 9,1957. The purpose of this application was to change the zone from residence “ B ” to business “A”. This application was denied. Thereafter on or about June 12, 1957, the petitioner filed with the respondent, the Building Manager of the Town of North Hempstead, plans and specification for the construction of the afore-mentioned gasoline filling station, diner and ice cream shop. The respondent refused to issue such a permit on the ground that such buildings and usages are not permitted in a section that is zoned residential “ B ”.
At the court hearing*, an expert real estate broker, George A. Kramer, testified on behalf of the petitioner. In brief, he testified that the subject property would be of little or greatly reduced value in view of the surrounding uses and in the sense of its permitted use. He stated that the Long Island Lighting property, which is on the other side of Willis Avenue, is now zoned business “A” and is used for the storage of cars, utility vehicles and trucks, reels of cable, storage of utility poles, cross-arms, power stations and power transformers.
Myers E. Baker, another expert real estate broker, testified on behalf of the respondent. He testified in effect that the subject property was not adversely affected by the Expressway. In fact, his testimony seemed to be that the Expressway enhanced the value of the subject property on the ground that the Expressway acts as a natural buffer to the business and industrial area to the north of the subject property. However, he did say, and this, of course, can also be judicially noticed, that the Expressway will be for general, unlimited traffic from New York City to Biverhead and will be for trucks, automobiles and motorcycles. The Expressway will contain three lanes in each direction. Mr. Baker expressed the opinion that the mall in the center of Willis Avenue will act as a buffer between the subject property and the Long Island Lighting property to the east and on the other side. However, a visual examination of *701 this mall shows that it merely separates the northbound traffic from the southbound. It is a slight elevation, three feet wide and made of concrete.
It is fundamental that zoning is a legislative function and a zoning or rezoning ordinance or an amendment thereto is presumed valid. The burden of proving the invalidity of a zoning ordinance or an amendment thereto is upon the party who assails its validity. The assailant must show by a fair preponderance of evidence that the zoning determination of the legislative body was arbitrary, capricious or unreasonable. If the legislative classification for zoning purposes is fairly debatable, the judgment of the legislative body is conclusive and beyond interference by the courts. The question, then, is: Is the refusal by the Town Board to rezone the subject premises to business “A ”, and that of the respondent to issue the permits, arbitrary, capricious or unreasonable and in violation of the petitioner’s constitutional right to the use of his property? In other words: Does the refusal of the Town Board and the respondent deprive the petitioner of the reasonable use of his property? We are presented with a situation where the subject property at one time was zoned for business. Thereafter, in 1948, it was rezoned residence “ B ”. Thereafter, however, in 1955, the Town Board rezoned the opposite parcel business “ A ” for the benefit of the Long Island Lighting Company. Then, too, prior to the condemnation by the State, the more northerly part of the subject property was zoned business “A There were located thereon a gasoline filling station and a diner. That parcel was taken by the State for the Expressway.
Willis Avenue, north of the Expressway, is zoned and is used for business. Willis Avenue, south of the Northern State Parkway, is also zoned and used for business. Although Power House Road was a highly traversed road prior to this application, the traffic impact of the prior roadway was small when compared to the traffic impact of the Expressway upon the subject property and the surrounding area. In fact, one of the exits of the eastbound Expressway traffic onto Willis Avenue will border the northern part of the subject property. Opposite the subject property there will also be an entrance from Willis Avenue onto the Expressway for easterly traffic to Riverhead. The vehicles coming from the south and headed for the west and New York City will also pass the subject property. Willis Avenue will undoubtedly become an exit for trucks and other vehicles which may head north to Roslyn and Glen Cove and south to Mineóla. The noise caused by truck traffic not only on the Expressway but also on the exits and entrances on Willis *702 Avenue will make the subject property extremely unattractive for residential purposes. Expert Baker submitted several plans to show that six residential homes could be built in the subject property. However, an attempt to build as he suggests would require the six homes to face the embankment to the west or would require the residential part of the homes to be buffered from Willis Avenue by attached garages. In fact, one plan submitted by Mr. Baker shows an exit from one of the proposed residential parcels coming out on the Expressway exit. To say that the subject property is valueless under the present zoning ordinance borders the ridiculous. However, it is clear to this court that the desirability of residential homes in the subject property, in the face of the heavy truck traffic expected on the Expressway, and on the exits and entrances thereto and on Willis Avenue, will be so diminished as to make the subject property of very small value.
The objections of the surrounding land owners are not of sufficient validity to overcome the petitioner’s position. Several land owners have their residences on top of the hill which overlooks the subject property and the Long Island Lighting Company. The court has viewed the subject area and has seen that the homes on top of the hill are more affected by the Long Island Lighting premises than the subject property which is on flat land level with Willis Avenue at the bottom of the hill. The other objectors are on the other side of Willis Avenue and south of the Long Island Lighting premises. Mr. Baker has testified that their property has not been diminished by the 1955 change of zoning from residence to business. The other objectors have two Levitt-type homes south of the subject property and facing Willis Avenue. These two homes were originally built by Levitt for exhibition purposes and were thereafter sold for residential purposes.
It is clear to this court, therefore, that the zoning ordinance in this case is as to the subject property so restrictive that the Town Board’s refusal to amend it to “ Business ” is arbitrary, capricious and unreasonable. In the language of the Court of Appeals, ‘ ‘ If the construction of an ordinance as applied to a particular piece of property and a particular set of facts is so arbitrary and unreasonable as to result in an invasion of property rights, the action of the zoning board thereunder will be invalidated.” (Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508, 521.)
It matters not that the zoning ordinance was valid when enacted; a subsequent change in conditions may invalidate an *703 ordinance validly enacted. (Evanns v. Gunn, 177 Misc. 85, 87, affd. 262 App. Div. 865.)
However, since in this proceeding the petitioner seeks an order in the nature of a mandamus directed against the Manager of the Building Department of North Hempstead for the issuance of certain building permits for a gasoline filling station, an ice cream shop and a diner, such an order cannot presently be granted. (Matter of Larkin Co. v. Schwab, 242 N. Y. 330, 335.) The petitioner must first obtain a permit (pursuant to art. X, § 101.28) from the Town Board for the storage of inflammable material; receive authorization (pursuant to art. X, § 102.1) as a special exception after a public hearing; and receive authorization (pursuant to art. X, § 102.20) as a special exception after a public hearing.
Under the wherefore clause the petitioner adds “ together with such other relief as may be proper ”. Therefore, having found the present ordinance as it affects the subject property to be invalid and unconstitutional, the petitioner may now bring this matter before the Town Board pursuant to sections 101.28, 102.1 and 102.20 of article X, ‘‘ Business A Districts ’ ’, in accordance with this decision.
Settle order on notice.