Abraham Schlissel, J.
Defendants, conceding the sufficiency of People’s prima facie proof of their violation of the relevant section of the zoning law, rely for acquittal upon the law’s asserted unconstitutionality.
Basically, they contend and have persistently insisted (through able and extraordinarly-dedicated counsel) that the degree, as well as the period of duration, of violation and the city’s tacit acquiescence therein bar successful prosecution of the instant charge even if the initial validity of the zoning-ordinance were to be acknowledged.
However, defendants not only do not acknowledge the validity of adoption of either the 1922 or the 1930 zoning ordinances but they have, on the contrary, vigorously attacked the propriety and legality of enactment of both.
Thus defendants resist the present charge by a two-pronged attack upon the constitutionality of the ordinance they are accused of violating; if they succeed in either of their efforts (i.e. in establishing the initial invalidity of both the 1922 and the 1930 ordinances because of defect in their enactment, or, failing therein, in satisfying- the court that subsequent events *495 have cumulatively barred the valid enforcement of a once-valid enactment) they are entitled to acquittal; if they do not, they must be adjudged guilty as charged.
As this court noted in its recent opinion in People v. Solkoff (Index No. 7 of 1967), it may not be doubted that a change of conditions may become so substantial and widespread as to render invalid and unenforcible a zoning ordinance which, when enacted, met every proper test of constitutionality. (Evanns v. Gunn, 177 Misc. 85, affd. 262 App. Div. 865.)
However, as was further suggested in Solkoff: “ Granted that this court possesses the authority to strike down the ordinance here under consideration upon a finding "of 1 a subsequent change in conditions ’, it remains to be considered and determined whether defendant has sustained the burden which so clearly rests upon her (Wulfsohn v. Burden, 241 N. Y. 288) of establishing the factual background required to support a finding of unconstitutionality. ’ ’
Before proceeding to an analysis of the proof submitted by defendants in attempted discharge of the ‘‘ heavy burden ’ ’ thus assumed by them (Matter of Di Maggio v. Brown, 19 N Y 2d 283), the court takes note of and rejects the city’s argument that the “ subsequent change in conditions ” referred to in decisions such as Evanns v. Gunn (supra) must be “ a legal change of character”. (Shortell v. Lewis, N. Y. L. J., Nov. 3, 1941, p. 1356, col. 6.)
"With the utmost of respect for the late and distinguished author of the Shortell decision, this court must and does respectfully disagree with the conclusion reached by him. In this court’s view (supported by decisions such as Matter of Di Maggio v. Brown, 19 N Y 2d 283, supra and Yick Wo v. Hopkins, 118 U. S. 356), disregard of an ordinance (with either the tacit or active consent of a municipality) may become so widespread as to make the statute a ‘ ‘ dead letter ’ ’, and attempted enforcement thereof abhorrent to the judicial conscience because, in effect, discriminatory as to the defendant selected for prosecution.
It is, in the light of this recognition of the verities and a consequent rejection of the theoretical, that the proof adduced at the trial here must be evaluated. Thus measured it plainly appears that here, as in Solkoff, and in this area just as there, a number of zoning violations (many involving over-occupancy) had for some time existed and been tolerated (at least until quite recently) by the municipal authorities.
It is another thing, however, to reach the implication-loaded conclusion which defendants would have the court draw from *496 the finding above announced, namely, that the entire zoning ordinance should and must be struck down.
The testimony submitted to the court established that 108 dwellings are located within the three-block area in which the subject premises are situated, and it has been suggested that some 28 of these were or had at some time been over-occupied in violation of the zoning ordinances.
Violation to the extent thus indicated (better than one house in every four or even every five) is hardly expressive of that degree of vigor in law enforcement which the people of this community had a right to expect and were for too long denied. On the contrary, the token enforcement which was for many years substituted for genuine effort to attain compliance serves as an irradicable blight upon our city, as well as an inescapable indictment of those whose sworn duty it was to at least attempt to achieve some discernible and recognizable pattern of impartial enforcement.
. On the other hand, however, this court must properly note that some 18 out of the 28 possible violators mentioned have now been brought into court and have been either convicted or offered guilty pleas and have not only paid substantial fines but, far more important, have been required to discontinue the illegal occupancies, and are now in compliance with the ordinance involved.
The present situation then is one in which there are at most 10 violations out of 108 possibles; some of these may well be altogether legal by reason of variances, prior nonconforming use or other cause.
Even if it were to consider the original 28 rather than the maximum of 10 unprosecuted violations, this court does not believe that if it could properly conclude, as a matter of either law or fact, that the breakdown in enforcement here demonstrated has been so widespread, so long continued, and so persistently ignored as to convert a constitutional and lawful enactment into one which cannot any longer be enforced. (Evanns v. Gunn, 177 Misc. 85, supra; Di Maggio v. Brown, 19 N Y 2d 283, supra; Yick Wo v. Hopkins, 118 U. S. 356, supra.)
Laxity in enforcement there has undoubtedly (and, indeed, virtually concededly) been; excessive tolerance toward this particularly virulent and epidemic kind of civil disobedience has doubtless been indulged in; disrespect for law and order and the anticipation that more would be permitted without challenge have certainly been promoted; investment of substantial sums of money in the now frustrated hope that violation would continue unpunished and, indeed, uninterrupted has been too long *497 encouraged; some unscrupulous and unworthy brokers and lawyers have surely waxed prosperous through encouraging the venal, the greedy, and the unwary to acquire property under the promise (expressed or implied) of immunity from prosecution.
All these circumstances (whose existence this court unhappily records as a fact of our municipal life) do not, however, in its judgment, justify a finding that the ordinance here in issue may not now be lawfully enforced. They do, indeed, lend point and substance to this court’s oft-expressed opinion that there is urgent need ‘ ‘ for a critical and detailed re-examination of our zoning laws in the light of admitted changes in our community and of admitted, although not legally justified, reliance upon a long period of only token enforcement of our zoning ordinances ”. (People v. Solkoff, Aug. 4, 1967).
In summary, it is this court’s opinion that the instant prosecution is not barred by the doctrine of the several cases hereinabove adverted to; that, neither as matter of law nor of fact, may it be said that the ordinance here under consideration has (if legally enacted) become unenforceable in constitutional fashion; that while need for improvement in enforcement (both substantial and immediate) has been effectively demonstrated, the earlier laxity in enforcement has not been so widespread or so long tolerated as to destroy the statute and render it wholly impotent; that a pattern of substantial vigor in enforcement has beeen established in recent years and is now in effect, and that defendants’ challenge of the maintainability of this prosecution must (to the extent hereinbefore discussed and for the reasons then stated) be and it now is rejected.
The court, before proceeding to a consideration of defendants’ other challenges of the instant prosecution and of their defenses against same, notes its view that the testimony of their witness Gluck, though impressive, was basically irrelevant, and its opinion that defendants, having deliberately acquired this property knowing or in a position to easily ascertain that same was in violation, can hardly be heard to complain against the easily predictable and virtually inevitable prosecution which followed.
It may well be (and doubtless is) true, as Mr. Gluck testified, that defendants’ property would be worth more as a three-family house than if legally occupiable by only two families; indeed this court has no reason to doubt that the difference in values might be as much as one third above the two-family value of $22,500 as stated by the witness.
These, in the court’s view, are considerations which might properly be presented to the City Council in support of a *498 citizens’ petition for re-examination such as this court has long, though vainly advocated; they are not, in its judgment, either relevant, material or meaningful in determining whether this prosecution is maintainable.
This court is, of course, aware of the fact that zoning laws, in their very nature, refer to land rather than owners, and that the owner’s knowledge cannot validate an otherwise invalid zoning law. (Vernon Park Realty v. City of Mt. Vernon, 307 N. Y. 493, 500-501.)
Nonetheless, it remains of the opinion that (particularly in view of their concession of the People’s prima facie case) the evidence as to defendants ’ deliberate acquisition of this property with actual or implied knowledge of the restrictions on its lawful use was properly received on the question of the degree of their culpability rather than on the basic issue as to their criminal responsibility.
Next to be considered and decided are defendants’ challenges of the validity of enactment and, consequently, the enforceability of the 1922 and 1930 zoning ordinances: the former is challenged for failure to prove proper publication as required by the relevant statute; the other because of alleged substantial variance between the ordinance as published and as finally enacted.
As to the 1922 ordinance, it is defendants’ position that it never achieved validity because of failure to publish same within seven days after passage.
In the year in question, section 76 of our city’s Charter (L. 1922, ch. 635) required that emergency ordinances intended to take effect on passage be published in the official newspaper within seven days after their enactment. Section 87 of such Charter at that time provided for proof of adoption and publication “ authenticated by the certificate of the publisher and the certificate of the Mayor ’ ’. Only the Mayor’s certificate has been produced here.
The absence of the publisher’s certificate above mentioned has provoked a degree of research on the part of both prosecutor and defense counsel which is both extraordinary and highly commendable.
The People, having discovered that the identical issue had been litigated and decided by the late Mr. Justice Cuff in Matter of Salmon Realty Corp. (Shay) (N. Y. L. J., June 2, 1938, p. 2669, col. 6) produced not only the entire original record therein but also called as their witness, Louis A. Friedman, Esq., now an esteemed and highly-regarded member of the Nassau *499 County Bar, and then an Assistant Corporation Counsel in charge of the cited litigation.
The record in question and Mr. Friedman’s testimony tended to establish that section 76 had indeed been complied with by the municipal authorities, that the 1922 zoning ordinance had been adopted by the City Council on Friday, August 18, 1922, and published in the Long Beach Life (then our official newspaper) on Tuesday, August 22, 1922, or well within the allotted seven-day period.
Defendants, undaunted and undismayed by this seemingly crushing and incontrovertible proof of compliance, in turn came forward with evidence tending to demonstrate that in the year 1922 the Long Beach Life was published every Saturday and not on Tuesday as Mr. Friedman had testified and as he had represented to Mr. Justice Cuff. At the same time they called the court’s attention to the lack of a publication date on the copy of the newspaper attached to the papers in the Salmon Realty case.
It is, of course, obvious that if the Long Beach Life was regularly published only on Saturdays during the year 1922, but one issue date would be legally valid, namely, Saturday, August 19, 1922; equally obvious is it that, in such event, the claim of an August 22 publication would be misleading and inaccurate unless a special edition was then issued.
The apparent conflict in the testimony thus adduced and above summarized must, it seems to the court, be evaluated in light of the passage of forty-five years and the intervening demise of the Long Beach Life and of its publisher, as well as of all of the 1922 members of the City Council and of other city officials.
In Fleetwood Manor v. Village of Huntington Bay (115 N. Y. S. 2d 615, 618) the late Mr. Justice Coldeu observed: 1 ‘ This Building Zone Ordinance has governed the people and restricted the real estate of the village for almost seventeen years without challenge or objection and should not be lightly invalidated. ’ ’
Equally true is it that this ordinance originally enacted close to a half century ago, sustained (when attacked for the precise reasons and upon the very grounds here advanced) in Matter of Salmon Realty (Shay) in 1938 and, also upheld, peripherally at least, in Baddour v. City of Long Beach (279 N. Y. 167) may not now be set aside and declared invalid for insignificant or insubstantial reasons, or minor error in its enactment.
Significant, too, is the relatively uncomplaining acceptance of this ordinance and the large degree of compliance therewith *500 over a period of years during which this community achieved the greater part of its growth from an infant city into a thriving municipality.
During that period thousands of transactions have been consummated in obedience to and reliance upon this statute which this court is now asked to declare invalid because in the year 1922 the ordinance may have been published eight rather than seven days after passage.
This court is not persuaded that this conclusion with its devastating consequences and substantial implications is either mandated or warranted.
On the contrary, it is convinced and now finds that the 1922 zoning ordinance was validly enacted and remained legally in force until replaced by the 1930 ordinance. In this connection, it notes that it is not satisfied that the ordinance of 1922 was not published on August 22, 1922 as asserted by Mr. Friedman; it rejects defendants’ claim that Mrs. Blumenthal’s testimony conclusively demonstrated that the Long Beach Life was published only on Saturdays during the year 1922, and .suggests the genuine possibility that a special edition may indeed have been issued on August 22 (a Tuesday) or, alternatively, that the 1922 ordinance may have been carried in the issue of Saturday, August 19.
Additionally it specifically determines that the presumption of nonpublication arising from the absence of the required certificate (CPLR 4532) has been adequately overcome.
Certain it is that the possibility of an August 19 or an August 22 publication has not been wholly excluded since concededly the copy of the paper attached to the papers in Matter of Salmon Realty Corp. (Shay) (N. Y. L. J., June 2, 1938, p. 2669, col. 6) carries no date. Equally certain is it that the ordinance was published and that the then populace of Long Beach was duly informed thereof through the official newspaper of the newborn city.
In these circumstances, it seems to the court that the ordinance would not be invalidated even were it to be assumed that publication occurred on August 23, 1922 rather than on August 16 or 22. This court cannot believe that for so minor an error and after so long a time lapse must such an ordinance be swept aside with the consequent impact upon many supposedly vested interests developed over a 45-year period.
In summary, the court concludes that, as matter of both law and fact, the 1922 zoning ordinance did become legally effective and it accordingly rejects defendants’ challenge thereof. In so doing it joins the distinguished company of Mr. Justice Cuef *501 who, as above noted, reached a like conclusion in Matter of Salmon Realty Corp. (Shay). While the authority of that determination is most impressive this court notes that it would have reached a like result as a matter of initial impression.
Finally to be considered is defendants’ attack upon the 1930 zoning- ordinance which regulated the property of this city for some 27 years until replaced by the 1957 enactment which defendants do not challenge.
In essence, it is defendants’ claim that the changes between the ordinance as proposed and published and as finally adopted were so substantial and numerous as, in effect, to constitute a new ordinance.
The city, on the other hand, insists that while changes were indeed made they were not significant in import and did not affect the uses permitted in Residence “ C ” District in which the instant premises are located.
A comparison between the ordinance as published and as enacted does indeed demonstrate that a number of changes were made before final enactment.
Nonetheless it is the court’s view and is now held, as matter of both law and fact, that these changes (limited as they were in scope and effect and having no reference to the maximum permissible occupancy in the zone here under consideration) did not require republication or invalidate the ordinance.
Here, as in the case of the 1922 ordinance, the court feels that a statute such as this which “ governed the people and restricted the real estate of [this city for almost thirty years] Avithout challenge or objection [may] not be lightly invalidated (Fleetwood Manor v. Village of Huntington Bay, 115 N. Y. S. 2d 615, 618, supra).
Here, as there, it believes that almost 40 years after its enactment during 27 of which thousands of transactions were consummated in obedience to and reliance upon this statute, it may not and should not be set aside or declared invalid for insignificant error in its passage or promulgation.
The court does not suggest that recourse may validly be had to short cuts or that the basic requirements of law may safely be disregarded.
What it does suggest and firmly believe is that, where as here, the variance between the proposal and the enactment is insignificant and insubstantial, it would be to defy form over substance to strike down this ordinance and to invite the chain reaction of chaos which would certainly result therefrom.
The court wishes to make its thinking and its meaning crystal clear: — Statutory conditions precedent must be obeyed and *502 he who deliberately ignores same does so at Ms peril; on the other hand, we have, it believes, long since emerged from that earlier time when‘ 1 2the precise word was the sovereign talisman, and every slip was fatal”. (Wood v. Duff-Gordon, 222 N. Y. 88, 91, Cardozo, J.).
For the reasons above stated the 1930 zoning ordinance is held to have been validly enacted and defendants’ challenge thereof rejected.
As has several times been suggested herein, the industry and application of both counsel have been such as to command the respect and commendation of this court which freely acknowledges the professional and judicial satisfaction which these lawyers have given it in their discharge of their respective obligations.
In view of the determinations hereinbefore announced defendants are directed to appear before tMs court on Friday, September 8, 1967, for imposition of appropriate sentence.