George B. Tepper, J.
Defendant herein is charged with a violation of the zoning laws of the City of Long Beach in that his building is being used for more than one-family occupancy in an area zoned for one-family use. Several other defendants facing similar charges have stipulated that the decision in this case should be applicable to them since the facts are substantially the same and the defenses raised are similar to those interposed herein.
*1004 The matter has been submitted on an agreed statement of facts, as follows:
Defendant’s house is occupied by more than one family and is located in a one-family zone in the west end area of Long Beach; there are approximately 1,500 houses in that area, and the records of the Water Department of the city indicate that approximately one third of these houses are designated as two-family houses.
It was further stipulated that a report of the City Planning Board indicated that approximately one third of the houses in the west end area have more families residing therein than is permitted under the zoning laws.
Defendant contended that all of the foregoing facts establish that there has been a drastic change of use of buildings in the area and, by reason thereof, the zoning law limiting houses in the area to single-family occupancy is now unconstitutional.
Defendant herein relies upon the decision of this court in the case of People v. Millstein (54 Misc 2d 493) to support his contention.
While I wholeheartedly concur in the final conclusion reached by my learned colleague in that ease, I must respectfully disagree with certain enunciations of the law in that decision.
In Millstein (supra, p. 495) the court said: “it may not be doubted that a change of conditions may become so substantial and widespread as to render invalid and unenforcible a zoning ordinance which, when enacted, met every proper test of constitutionality. (Evanns v. Gunn, 177 Misc. 85, affd. 262 App. Div. 865.) * * * The court takes note of and rejects the city’s argument that the ‘ subsequent change in conditions ’ referred to in decisions such as Evanns v. Gunn (supra) must be ‘ a legal change of character ’. (Shortell v. Lewis, N. Y. L. J. Nov. 3, 1941, p. 1356, col. 6 [Hoonev, J.].) ”
I cannot agree with this declaration of the law. A subsequent change in conditions, no matter how substantial or widespread, which is illegal in character can never be the basis of rendering invalid any law or ordinance.
Tn Shortell v. Lewis (supra), plaintiff sought declaratory judgment that the zoning laws of the City of Long Beach were unconstitutional with respect to plaintiff’s property on substantially the same grounds raised by defendant herein. The court rejected these arguments, stating: “ (1) The change in the nature of the premises from a one-family house has been brought about by plaintiff or his predecessor in title. No permit was received from the building department and apparently alterations to effectuate the change were made without any sanction *1005 in law. Hence, the maintenance of the boarding house was illegal. Such illegality can furnish plaintiff no basis for the claim that the zoning ordinance is invalid. (2) * * * (3) Failure of the City to enforce the ordinance in the past does not estop the City from enforcing it at this time. In Premium Bond Corp’n v. City of Long Beach (249 A. D. 756) a vested right to conduct a rooming or boarding house contrary to the City’s zoning laws was claimed for the same reason of lack of enforcement, and also for the further reason that the City’s water department had classified the property involved as a rooming and boarding house and had applied the schedule of charges adopted for such classification of the said premises. The Appellate Division said: ‘ In our opinion, the City of Long Beach is not estopped from enforcing the provisions of the zoning ordinance because of any acts or conduct on the part of any of its administrative officers. The adoption of a zoning ordinance is a governmental function. ’ (4) The fact that other property in the vicinity may be illegally operated or used contrary to the provisions of the zoning law is not such a change in the character of a use to justify the intervention of a court of equity. When a change of character is indicated, it means always a legal change of character. Furthermore, as was said by the court in Brown v. Village of Owego (260 App. Div. 328; affd. 284 N. Y. 655): ‘ A violation of the ordinance cannot be used by the plaintiff as the basis for finding that the ordinance is invalid as the question is not whether someone else has been favored but whether the petitioner has been oppressed ’ (citing cases).” (Italics supplied.)
In the instant case, as in Shortell, the change in the nature of defendant’s premises was brought about by the defendant or his predecessor in title. The failure of the city to enforce the ordinance in the past does not estop it from enforcing it at this time. The city’s water records, which classified numerous houses as two-family in the one-family zone, do not estop the city from enforcing the zoning ordinances. That this and other property in the vicinity may have been illegally used contrary to the zoning law is not such a change of character of use to justify the determination that the zoning law had become unconstitutional. Violations of the ordinance by the defendant and others cannot be used as the basis for finding the ordinance invalid.
In Nelkin v. Town of Oyster Bay (14 Misc 2d 764), after the enactment of the zoning law there was a condemnation of a portion of the plaintiff’s property. The court held the zoning ordinance unconstitutional because the legal change (condemnation) left no reasonable use to the owners of the remaining property.
*1006 Isenbarth v. Bartnett (206 App. Div. 546, affd. 237 N. Y. 617) cited by defendant, is, in fact, authority against his contention herein. The facts indicate that the side of the street opposite petitioner’s property was zoned for business for 13 blocks. On the same side as petitioner’s property it was zoned for business on 4 blocks north and 4 blocks south of the area including petitioner’s property. The street had been widened twice and had become the main thoroughfare in the city, and there was a likelihood that it would be widened again. At each end of the street were railroads, and the street itself was used as a main thoroughfare between them. The restriction of use of plaintiff’s property, for residential purposes only, in this primarily business and commercial area, greatly decreased the value of the property and was done merely for the purpose of preserving the vista of a private park located to the rear of petitioner’s property. The court held that the zoning regulation was not exercised for the preservation of health, safety, convenience and public welfare of the people at large, and was legally unreasonable and therefore unenforcible. The development of the business areas surrounding petitioner’s property, the increased traffic, the widening of the streets, were all legal changes that developed over the years and formed the basis for the conclusion reached in that case.
In Evanns v. Gunn (177 Misc. 85, affd. 262 App. Div. 865, supra) the area in which plaintiff’s property was located was originally zoned for business. Six months after the enactment of the zoning law, it was amended to change only the plaintiff’s property from a business to a residential use. The court held (pp. 86-87) that “ such amendment constituted an invasion of property rights ”.
It further held that a subsequent change in conditions may invalidate an ordinance or statute validly enacted. It was referring to the legal change which permitted all of the property surrounding plaintiff’s parcel to be used for business purposes. The amendment which changed the principal use of only one parcel, namely plaintiff’s property, from business to residential was therefore invalid.
Defendant cites Matter of Fucigna v. O’Connor (14 Misc 2d 698) in support of his position. In that case the property under consideration was at one time zoned for business and subsequently rezoned to residential. Thereafter the parcel opposite was rezoned for business, a portion of the subject premises was condemned for highway purposes and eventually the Long Island Expressway was built near this property. All of. these changes in the area were legal changes which adversely affected the *1007 property involved and, therefore, the zoning law which restricted the property to residential use only was unconstitutional when applied to that property.
In People v. Leighton (44 N. Y. S. 2d 779), also cited by defendant, the court merely held that the defendant, who was charged with a zoning violation for using a one-family house for two families, should have been permitted to introduce evidence concerning the character of the neighborhood and the type of houses situated therein in an endeavor to show that the ordinance in its application to the defendant’s premises constituted an improper exercise of the police power and unlawfully deprived her of her property without due process of law. There is nothing in that decision which indicates that if the change of character of the neighborhood did not result from legal changes, the court could still determine the law unconstitutional.
Defendant, in further support of his position, quotes from Millstein (supra, p. 495) where the court said: “ In this court’s view (supported by decisions such as Matter of Di Maggio v. Brown, 19 N Y 2d 283, and Yick Wo v. Hopkins, 118 U. S. 356), disregard of an ordinance (with either the tacit or active consent of a municipality) may become so widespread as to make the statute a ‘ dead letter ’, and attempted enforcement thereof *■ * * discriminatory as to the defendant selected for prosecution.”
I most respectfully disagree with this holding. Disregard or nonenforcement of an ordinance, no matter how widespread, standing alone, can never make such statute a “ dead letter”.
In Matter of Di Maggio v. Brown (supra, pp. 290-291) the court said:
“ State and lower Federal courts have uniformly recognized that the doctrine of Yick Wo reaches only intentional or purposeful discrimination. (See Comment, The Right to Nondiscriminatory Enforcement of State Penal Laws, 61 Col. L. Rev. 1103, 1113-1114 n. 48 [1961].) This is the test applied in New York, and it has been strictly interpreted. * * *
‘1 ‘ Arbitrary and intentionally unfair discrimination ’ — ‘ clear and intentional discrimination ’ — ‘ invidious discrimination ’. Petitioner must meet the ‘ heavy burden ’ of proof required to sustain such an allegation (People v. Utica Daw’s Drug Co., [16 AD 2d 12], supra) * * #.
‘1 What petitioners have illustrated from the stipulation as to nonenforcement is mere nonenforcement of the statute against others similarly situated. Something more must be proven. It must be shown that the provisions * * * were enforced as against petitioners (and not enforced as to others * * *) *1008 pursuant to an intentional and invidious plan of discrimination # * *. As the Supreme Court stated in Ah Sin v. Wittman, ([198 U. S. 500], supra): ‘ No latitude of intention should be indulged in a case like this. There should be certainty to every intent * * * This is a matter of proof, and no fact should be omitted to make it out completely ’. (198 U. S., supra, p. 508.) ”
As in Matter of Di Maggio v. Brown (supra), defendant herein has, at best, attempted to show mere nonenforcement against others similarly situated. He has shown no arbitrary, intentional, unfair, clear or invidious discrimination against him in the enforcement of the zoning laws.
Defendant herein has concededly violated the zoning laws. The defenses urged by him are without merit. Under all of the circumstances, I find defendant guilty of the charge of violating chapter 9, article 1, section 9-105.6 of the Municipal Code. Defendant is directed to appear for sentencing on October 18, 1968 at 9:00 a.m.